DWELLE v. ALLEN.

(District Court, S. D. New York. February 13, 1912.)

PROCESS (§ 120*)—SERVICE OF SUMMONS—NONRESIDENT—ATTENDANCE ON GRAND JURY.

Defendant, a citizen and resident of Montana, was indicted in the Southern District of New York, and on October 2, 1911, appeared, pleaded to the indictment, was sentenced to a fine, which he paid the same day, and was discharged. On that date he was served with a subpœna by the United States district attorney for the Southern District of New York to attend and testify before the grand jury on October 3, 1911, and he, having appeared and testified on those dates, was directed to reappear on October 11th. He attended on the latter date, but was not called on further to testify. He was interrogated privately by one of the district attorneys, and while leaving the building he was served with a summons in a civil action brought in the state court. Defendant appeared specially, removed the cause to the federal court, and then, further appearing specially, moved to vacate the summons. *Held*, that defendant was under subpœna at the time he was served, and that the service was therefore invalid.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 150; Dec. Dig. § 120.*]

Action by Helen Fuld Dwelle against Nathan Allen. On motion to vacate a summons. Granted.

Motion to vacate summons served upon defendant while in attendance by virtue of a subpœna on the grand jury of the Circuit Court of the United States for the Southern District of New York.

The defendant, a citizen and resident of the state of Montana, was indicted by the grand jury of the Circuit Court for the Southern District of New York for smuggling. On October 2, 1911, he appeared in the city of New York, pleaded to the indictment, was sentenced to a fine which he paid on the same day, and was discharged. On the same day before paying the fine, he was served with a subpœna by the United States district attorney for the Southern District of New York to attend before the grand jury of the Circuit Court of that district on October 3, 1911. He appeared on the 3d and 4th days of October and testified, when he was excused by the district attorney, but directed to reappear before the grand jury on October 11, 1911. He then went to Kenosha, Wis., upon business of his own, and returned to New York in obedience to the subpœna on October 11, 1911, attended before the grand jury, but was not called upon further to testify. He was interrogated privately by one of the assistant district attorneys of the district on that day, and while leaving the building he was served with the summons in this action, which was originally brought in the Supreme Court of the state of New York. The defendant appeared specially in this action, filed a petition of removal on the ground of diverse citizenship, and now, still appearing specially for the purpose, moves to vacate the process.

Edwin W. Willcox, for plaintiff.
H. Snowden Marshall, for defendant.

HAND, District Judge (after stating the facts as above). The plaintiff's chief reliance is Netograph Mfg. Co. v. Scrugham, 197 N. Y. 377, 90 N. E. 962, 27 L. R. A. (N. S.) 333, 134 Am. St. Rep. 886. In that case Scrugham, a citizen of Ohio, came to New York to testify at a legislative hearing. While there, he was arrested on a criminal charge, and thereafter indicted by the grand jury of the Court of General Sessions for the county of New York, to whose indictment he gave bail. He then returned to Ohio, but later came back to New York for trial, at which he was acquitted on March 26, 1909. He stayed overnight in New York partly because he could get no berth in a sleeping car and partly to consult counsel in regard to other indictments, as to which it does not appear whether or not he had given bail. The plaintiff served him with process early on the morning of March 27, 1909, in an action having no connection with the subject-matter of the indictments. The Court of Appeals of the state of New York declined to vacate the process, on the ground that his release from custody on recognizance still left him in the custody of his bail, and that his subsequent appearance was not voluntary. The remarks of the court on pages 381 and 382 of 197 N. Y., on page 962 of 90 N. E. (27 L. R. A. [N. S.] 333, 134 Am. St. Rep. 886), show that the court based their decisions wholly on the ground that the defendant was actually in the custody of his bail; hence they thought applicable the rule that the privilege against the process does not exist when the person served is in custody. Certainly that case has no application to the case of a witness under subpœna, who, though he is subject to attachment, is in no sense actually in custody. It is therefore not necessary to consider whether the decision is authori-

tative for a federal court. The purpose of the rule is to remove any inducement to the party or witness to avoid appearance, and, when he is in custody, de facto, under all the authorities, the reason fails. There is at least an argument that the custody of bail is not such that it will surmount the possible deterrent which might arise from liability to civil suit, but that question is not up here. The privilege in federal courts extends to witnesses appearing under subpœna. Hurst's Case, 4 Dall. 387, 1 L. Ed. 878; Small v. Montgomery (C. C.) 23 Fed. 707; Skinner & Mounce Co. v. Waite (C. C.) 155 Fed. 828. Originally the doubt seems indeed to have been not whether subpœna, but whether voluntary appearance, would not avoid the privilege (Rex v. Keel, 3 Dougl. 45 [1782]) was the first case in which a witness out of reach of process voluntarily appeared. There had been a subpœna served, but it seems under the court rules to have been void, and the case was decided on that assumption. Lord Mansfield observes that subpœna would be useless upon a witness abroad, showing that he was answering the suggestion that the privilege extended only to a case of subpœna. Buller, J.'s, opinion is still more significant (page 47):

"It is not true that the privilege of a witness depends upon a subpœna. I have found a case (E. 27, Car. 2) where a man was discharged who came to London to make an affidavit, which might have been made in the country; but it was for the furtherance of justice, and he was therefore protected. No subpœna is necessary where the witness lives abroad."

Lord Eldon argued in the same way in Ex parte Byne, 1 Vesey and Beame, 316, where a witness appeared voluntarily. These cases show that the question a hundred years ago was whether voluntary appearance did not avoid the privilege. The plaintiff's position is a strange inversion of the history of the law. If authority is needed, in Spence v. Stuart, 3 East, 89, the King's Bench canceled a bail bond which a defendant had given on a capias; he being in attendance upon a prior action under summons. The fact that the defendant was a party to the prior action is not material, if he be summoned. Although the rule was discharged in Randall v. Gurney, 3 Barn. and Ald. 252, under similar circumstances, no one doubted that the privilege had existed, and the case turned upon delay. Sir Thomas Plumer ruled similarly in Franklyn v. Colqhoun, 1 Mad. 580. So, also, of a bankrupt, Ex parte Temple, 2 Ves. and B. 391. Gibbs v. Phillipson, 1 Russ. and M. 19, shows the same understanding of the privilege, though for other reasons it was denied.

It is quite true, as the plaintiff says, that the New York cases all seem to be those in which the person served appeared voluntarily either as a suitor or a witness; at least I can find no instance to the contrary. However, the reason for this is plain, on reflection, because the case must be rare in which a witness out of reach of summons will appear under subpœna. Such cases are more likely in the federal courts, where the process of subpœna runs outside the district or the state. No distinction is made anywhere in the cases, as far as I can find, between a witness under subpœna and one appearing voluntarily, and the proper test is not, I think, whether the appearance be voluntary or not, but whether the privilege will promote the pur-

poses of justice. It would certainly be a strain upon one's confidence in the sanctions of process to say that the privilege would not conduce to obedience. How far such considerations apply also when the defendant is at large under bail is a different matter, for the sanction is greater and the rights of the bail immediate. Moreover, if the service of subpœna avoid the privilege, I cannot see why a threat to subpœna a witness who lives within 100 miles should not do the same. Again, if a threat would do, should not the mere liability to process answer as well? Witnesses sometimes come without process merely because they recognize the futility of refusal. That does not mean that they might not evade either subpœna or attachment if they were liable on arrival to service of original process. Therefore, however it may be when they are actually in the constructive custody of their bail, the scope of the privilege, which should be dependent on its purposes, certainly should extend to one who, in answer to a subpœna, comes within reach of original process.

As to laches, the defendant has certainly not been expeditious, but no step has been taken in the action, and I hardly think the delay long enough to justify refusal of relief.

The motion is granted, and the writ quashed.